| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |

-------------------------------------------------------x

In re:

BARBARA A. DALY,

                              Debtor.

-------------------------------------------------------x

Chapter 13

Case No. 11-22368 (RDD)

## MEMORANDUM OF DECISION

**A P P E A R A N C E S :**

**HOGAN LOVELLS US LLP**
*Counsel for Wells Fargo Bank, N.A. d/b/a/*
 *America's Servicing Company*
875 Third Avenue
New York, New York 10022
By:    David Dunn, Esq.
           Nicole E. Schiavo, Esq.

**KURTZMAN MATERA, P.C.**
*Counsel for the Debtor*
664 Chestnut Ridge Road
Spring Valley, New York 10977
By:    Rosemarie E. Matera, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is a motion for partial summary judgment filed by Wells Fargo Bank, N.A. d/b/a America's Servicing Company ("Wells Fargo"). Wells Fargo acts as servicer for U.S. Bank National Association ("U.S. Bank"), which in turn is the trustee for the Bear Stearns Asset Backed Securities I Trust 2004-AC5 (the "Trust"). Wells Fargo contends that the Trust is the holder of a loan on the Debtor's real property and that Wells Fargo, as servicer, has standing to file a proof of claim on behalf of the Trust. The Debtor disagrees. She argues that the Trust

failed to comply with the terms of the relevant contractual agreement and that the documentation relied upon by Wells Fargo is insufficient to grant Wells Fargo standing. For the reasons set forth below, the summary judgment motion is granted because the Court concludes that Wells Fargo has standing to file the proof of claim.

## BACKGROUND

On July 14, 2004, the Debtor executed a promissory note in the amount of $368,000 (the "Note") in favor of Union Federal Bank of Indianapolis. *See* Response of Barbara A. Daly to Wells Fargo Stmt. Undisputed Facts ¶ 1 (ECF No. 87.) The Note is secured by the real property located at 2 South Mary Francis Street, Tappan, New York (the "Property"), pursuant to a mortgage executed on July 14, 2004 by the Debtor and non-debtor Myles Mahady (the "Mortgage"). *See id.* ¶ 2.

On September 1, 2004, Wells Fargo, U.S. Bank, Bear Stearns Asset Backed Securities I LLC and EMC Mortgage Corporation entered into a pooling and servicing agreement ("PSA") that provided for the transfer of a pool of mortgage loans to the Trust. *See* PSA at 1 (ECF No. 94.) The PSA sets requirements for the assignment of the loans and related documents, including the original notes, mortgages and related mortgage assignments. *See* PSA § 2.01.[1] The PSA provides that a schedule of the transferred mortgage loans is to be attached as Exhibit B to the PSA. *See* PSA at 19-20 (defining the term 'Mortgage Loan Schedule'). Wells Fargo asserts that the Note and Mortgage of the Debtor were transferred to the Trust through the PSA and related transaction, a fact which is disputed by the Debtor.

---

[1] For instance, the PSA states that the assigned notes be "indorsed without recourse to the order of 'U.S. Bank National Association, as Trustee for certificateholders of Bear Stearns Asset Backed Securities I LLC, Asset Backed Certificates, Series 2004-AC5,' and showing to the extent available to the Seller an unbroken chain of endorsements from the original payee thereof to the Person endorsing it to the Trustee." PSA § 2.01.

The Note bears two indorsement stamps, each affixed to the back of the last page of the Note. *See* Note (Ex. B. to Matera Decl.)  In prior proceedings in this case, it was determined that the first indorsement located on the top of the page is the operative indorsement for purposes of this proceeding.[2]  This indorsement is undated and is indorsed without recourse by Union Federal Bank of Indianapolis to US Bank National Association, as trustee for certificate holders of Bear Stearns Asset Backed Securities I LLC Asset Backed Certificates, Series 2004-AC5. *See* Note (Ex. B to Matera Decl.)[3]  Additionally, a separate assignment of mortgage, dated October 27, 2009, purports to assign the mortgage from "The Huntington National Bank smbt Sky Bank sbmt Union Federal Bank of Indianapolis"[4] to "U.S. Bank National Association, as Trustee for BSABS 2004-AC5." Assignment of Mortgage (Ex. C to Schiavo Decl.) (ECF No. 83.)

The Mortgage provides that "the property to which the mortgagee has a lien includes 'all Insurance Proceeds for loss or damage.'" Mortgage at 3 (Ex. C to Schiavo Decl.)  It also requires that "[a]ll of the Insurance policies and renewals of those policies will include what is known as a 'Standard Mortgage Clause' to protect Lender and will name Lender as mortgagee and/or as an additional loss payee." *Id.* ¶ 5.  The Property was insured by a Fire Policy with United Services Automobile Association ("USAA").  America's Servicing Company is listed on

---

[2]    The Note also bears a second indorsement, the validity of which has been questioned by the Debtor. At a pretrial conference held before Judge Drain, Wells Fargo agreed that it was only relying upon the first indorsement to establish standing. For that reason, Judge Drain concluded that there was no need for the Court to address the validity of the second indorsement. *See* Hr'g Tr. 9-11, June 4, 2013 (ECF No. 80). Indeed, at the hearing on this motion before the Court on August 1, 2014, the parties addressed only the validity of the first indorsement.

[3]    As previously noted by Judge Drain before this matter was transferred, the indorsement in question is "stamped 'paid [to] the order of' with an asterisk and then a further stamp below beside[] another asterisk that says 'U.S. Bank National Association as trustee for certificate holders of Bear Stearns Asset Backed Securities 1, LLC Asset Backed Certificates Series 2004-AC5' and is signed by a vice president of Union Federal Bank of Indianapolis." Hr'g Tr. 49:21-50:1, April 12, 2012.

[4]    The reference to this string of institutions as assignor appears to reflect various mergers that have taken place since the date of the Mortgage, starting with Union Federal of Bank of Indianapolis and ending with The Huntington National Bank. While not explained by the parties, the reference to "sbmt" appears to be short for the phrase "successor by merger to." *See, e.g., Estate of Malloy v. PNC Bank*, 2012 WL 176143, at *5 n.5 (Ohio Ct. App. Jan. 23, 2012); *Clark v. PNC Bank*, 2014 WL 359932, at *4 n.9 (N.D. Ga. Feb. 3, 2014).

the Policy as holding an additional interest as first mortgagee. *See* Certificate of Insurance (Ex. B to Schiavo Decl.)

On November 15, 2010, a fire damaged the Property. *See* Response of Barbara Daly to Wells Fargo Stmt. Undisputed Facts ¶ 9. On December 15, 2010, USAA issued a check in the amount of $153,697.51 on account of the damage to the Property. *See id.* ¶ 11. The check was issued jointly to the Debtor, Wells Fargo and Waterfield Financial Corp., but it was sent to—and cashed by—Wells Fargo. *See id.* A second check was subsequently issued by USAA in the amount of $56,175.51. *See id.* ¶ 12. This second check initially was sent to Wells Fargo, but was subsequently cancelled and a replacement check was sent to the Debtor. The replacement check is currently in the Debtor's possession and has not been cashed. *See id.*

On March 2, 2011, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. *See id.* ¶ 7. On May 19, 2011, the Debtor's case was converted to a Chapter 13. *See id.* ¶ 8. On June 22, 2011, America's Servicing Company filed a proof of claim, which is designated as Claim Number 4 on the Debtor's claims register (the "Claim"). *See id.* ¶ 13. America's Servicing Company filed the Claim as servicer for U.S. Bank National Association, as Trustee for BSABS 2004-AC5. *See* Proof of Claim (Ex. C to Schiavo Decl.) On July 15, 2011, the Claim was amended to revise the arrearage amount. *See* Response of Barbara Daly to Wells Fargo Stmt. Undisputed Facts ¶ 14.

In late March 2011, Wells Fargo filed a lift stay motion as to the Property, but the motion was subsequently withdrawn. *See* ECF Nos. 8, 9, 34. Wells Fargo also filed a limited objection to confirmation of the Debtor's Chapter 13 plan. *See* ECF No. 26. In July 2011, the Debtor filed an objection to the lift stay motion, a response to the confirmation objection and a cross motion requesting that Wells Fargo be directed to surrender the $153,697.51 insurance payment and

4

indorse a check for the remaining amount of the insurance proceeds. *See* ECF No. 27. After the Court deemed the Debtor's cross-motion to constitute a complaint, the Debtor subsequently filed a motion for summary judgment. *See* ECF No. 37. The Court denied the Debtors' motion for summary judgment in its entirety from the bench and by Order dated November 7, 2012. *See* ECF Nos. 50, 55. In that denial, the Court concluded, among other things, that it could not determine based on the existing record whether the mortgage was properly assigned to Wells Fargo and whether Wells Fargo was the proper holder of the note. *See* Hr'g Tr. 51:18-22, April 12, 2012. Wells Fargo now has moved for summary judgment on the issue of its standing to assert the Claim.

## DISCUSSION

To prevail on a motion for summary judgment, the moving party must establish that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; s*ee also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986); *Mark IV Indus. v. N.M. Envtl. Dep't* (*In re Mark IV Indus.*), 438 B.R. 460, 464–65 (Bankr. S.D.N.Y. 2010). A material fact is one that "might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal citations and quotations omitted). All inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc.* (*In re Ames Dep't Stores, Inc.*), 161 B.R. 87, 89 (Bankr. S.D.N.Y. 1993).

Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, demonstrate that there is a genuine issue of fact for trial. *See Celotex*, 477 U.S. at 323; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87 (1986) (after the moving party has met its burden under Rule 56(c), opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts"). If the non-moving party fails to make such a showing, then the moving party is "entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322-23; Fed. R. Civ. P. 56(e).

I.  Applicable Legal Standard for Proofs of Claim

Federal Rule of Bankruptcy Procedure 3001(b) provides that a proof of claim may be filed by a "creditor or the creditor's authorized agent . . . ." Fed. R. Bankr. P. 3001(b). It is well established that a servicer has standing to file a proof of claim on behalf of a lender. *See In re Minbatiwalla*, 424 B.R. 104, 109 (Bankr. S.D.N.Y. 2010) ("A servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer.") (citations and quotations omitted); *see also In re Conde-Dedonato*, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008) (collecting cases).

Under New York law, either written assignment or possession of a note with proper indorsement is sufficient for standing. *See U.S. Bank, N.A. v. Collymore*, 890 N.Y.S.2d 578, 580 (2d Dep't 2009) ("In a mortgage foreclosure action, a plaintiff has standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced. . . . Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident."); *Mortgage Elec. Registration Sys., Inc. v. Coakley*, 838 N.Y.S. 2d 674, 674 (2d Dep't 2007); N.Y. U.C.C. § 3-202(1) ("Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated through delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery."); N.Y.U.C.C. § 1-

6

201(20) ("Holder means a person who is in possession of a document of title or an instrument or an investment certificated security drawn, issued or indorsed to him or to his order or to bearer or in blank.")

II.   Wells Fargo Has Standing

Under the language of the PSA, Wells Fargo was appointed as master servicer with respect to the assets in the Trust. *See* PSA at 17 (defining master servicer as Wells Fargo); *see also Affidavit of Mary Ellen Brust in Support of Wells Fargo Bank's Opposition to Debtor's Cross Motion* (the "Brust Affidavit") (ECF No. 30.1.) ¶ 2 (stating that Wells Fargo d/b/a America's Servicing Company is the servicer of the mortgage loan). Indeed, the Debtor acknowledges that Wells Fargo is the servicer of mortgages assigned to the Trust. *See* Debtor's Memo. of Law in Opposition to Motion ¶ 21.[5]

As servicer, Wells Fargo clearly has standing to file a proof of claim relating to the assets held by the Trust. The issue therefore becomes whether the Trust assets include the Debtor's mortgage loan. Wells Fargo argues that the Note and the Mortgage were properly transferred by Union Federal Bank of Indianapolis to the Trust. To support this argument, Wells Fargo relies on (1) the indorsement of the Note to the Trust, (2) the physical delivery of the Note to the Trust, and (3) assignment of the Note to the Trust under the PSA. The Court concludes that the Trust assets include the Debtor's mortgage loan, by virtue of both the indorsement and physical delivery of the Note to the Trust.

As to the first, New York law requires that "an indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a

---

[5]   In her Response to Wells' Fargo's Statement of Undisputed Facts, the Debtor states that "the very issue before the Court is whether Wells Fargo *is properly acting as servicer* for the Trust and had such right as of the Filing Date." ¶5 (emphasis added). The Debtor does not elaborate on this statement, but it directly contradicts the Debtor's acknowledgement that Wells Fargo is the servicer for loans in the Trust. Additionally, the Debtor offers no evidence to refute the statement in the Brust Affidavit or the language of the PSA that Wells Fargo is servicer.

part thereof." N.Y. U.C.C. § 3-202(2). The indorsement in question is physically attached to the Note itself, with the original Note indorsed on the back of page 3 of 3. *See* Note (Ex. C to Schiavo Decl.) New York law also states that an "instrument specially indorsed becomes payable to the order of the special indorsee . . . an instrument payable to order and indorsed in blank becomes payable to bearer and . . . the holder [of an instrument] may convert a blank indorsement into a special indorsement by writing over the signature of the indorser in blank any contract consistent with the character of the indorsement." N.Y. U.C.C. § 3-204.[6] Wells Fargo claims that the Note was indorsed in blank by Union Federal Bank of Indianapolis, then specifically to U.S. Bank as trustee for the certificate holders of the Trust. *See* Note (Ex. C to Schiavo Decl.); Wells Fargo Memo. in Support of Summary Judgment at 7. The Debtor's opposition does not raise any argument, either factual or legal, challenging the indorsement of the Note by Union Federal Bank of Indianapolis to U.S. Bank as trustee. Given these facts, the Court agrees with Wells Fargo and concludes that Wells Fargo has established that the indorsement here satisfies applicable New York law.[7]

Additionally, it is undisputed that Wells Fargo has possession of the original Note and produced it at the hearing held before this Court on August 1, 2014, at which time the Court

---

[6] N.Y.U.C.C. § 3-204 provides:

(1) A special indorsement specifies the person to whom or to whose order it makes the instrument payable. Any instrument specially indorsed becomes payable to the order of the special indorsee and may be further negotiated only by his indorsement.

(2) An indorsement in blank specifies no particular indorsee and may consist of a mere signature. An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially indorsed.

(3) The holder may convert a blank indorsement into a special indorsement by writing over the signature of the indorser in blank any contract consistent with the character of the indorsement.

[7] In the Debtor's Response to Wells Fargo's Statement of Undisputed Facts, the Debtor states that "[t]he condition of the Note and any endorsement remains suspect and ineffective." Response of Barbara Daly to Wells Fargo Stmt. Undisputed Facts ¶ 16. The Debtor, however, has raised no specific issue with the condition or structure of the indorsement that would rise to a material fact in dispute for purposes of this motion.

inspected it. Wells Fargo also filed the Brust Affidavit,[8] which states that both the Note and Mortgage were physically delivered to Wells Fargo as custodian for U.S. Bank prior to the commencement of the Debtor's bankruptcy and that Wells Fargo, as custodian for U.S. Bank remains in possession of both the Note and the Mortgage. *See* Brust Aff. ¶ 4.

In the face of these undisputed facts, the Debtor raises a number of arguments, none of which the Court finds persuasive. The Debtor first challenges the validity of the written Assignment of Mortgage, noting that the date of the assignment was at a time when the loan was in default. But the Debtor fails to explain why the validity of the assignment of mortgage would be relevant under these circumstances, given that the Mortgage passed to the Trust through operation of law upon the transfer of the Note to the Trust. *See In re Escobar*, 457 B.R. 229, 239 (Bankr. E.D.N.Y. 2011) (noting that under New York case law, "as a general matter, one a promissory note is tendered to and accepted by an assignee, the mortgage passes as an incident to the note.") (citing *Coakley*, 838 N.Y.S.2d at 623); *Collymore*, 890 N.Y.S.2d at 580 ("Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident.").

The Debtor next argues that the indorsement, even if valid, is insufficient to support the claim because it is undated. The Debtor relies on *In re Densmore*, 445 B.R. 307 (Bankr. D. Vt. 2011), where the court denied summary judgment as to the standing of a mortgage servicer because there was an outstanding question of fact as to when a note was indorsed. But *Densmore* is distinguishable on its facts. In *Densmore*, the court examined whether the plaintiff

---

[8] The Brust Affidavit was originally submitted in connection with Wells Fargo's *Opposition to Debtor's Cross Motion for Surrender and Direction to Execute Additional Insurance Check* (ECF No. 30.) The Brust Affidavit is, however, relied upon by Wells Fargo in its summary judgment pleadings and the Debtor has not raised any argument with respect to the Brust Affidavit in either its pleadings on this motion or at the hearing held on August 1, 2014.

9

was the holder of the note at the time the complaint was filed to enforce a mortgage note. *Densmore*, 445 B.R. at 312 (citing *Parker v. U.S. Bank Nat'l Assoc. (In re Parker)*, 445 B.R. 301, 305 (Bankr. D. Vt. 2011). The court compared the situation to the filing of a proof of claim, noting that the "seminal date for analysis and allowance of a proof of claim, including the question of standing, is the date the bankruptcy case was commenced. . . . Therefore the critical inquiry is whether Litton was the holder of the Note as of the date of the Debtor's bankruptcy filing." *Densmore*, 445 B.R. at 312. As the parties had not presented evidence regarding the date of the indorsement, the court in *Densmore* denied the servicer's motion for summary judgment. *See id.* at 308, 312.

By contrast, Wells Fargo here has provided evidence that the indorsement was signed prior to the filing of the Debtor's bankruptcy. Specifically, Wells Fargo relies upon the Brust Affidavit, which states that after the Debtor's execution of the Note, "[t]he Note was subsequently indorsed in blank and both the Note and Mortgage were transferred and physically delivered to Wells Fargo as custodian for U.S. Bank prior to the commencement of the [sic] this bankruptcy petition." Brust Aff. ¶ 4. Ms. Brust, a vice-president of Loan Documentation for Wells Fargo, states that her statements are based upon her personal knowledge and her review of business records and files relating to the matter. *See* Brust Aff. ¶ 1. Such an affidavit is sufficient to establish facts supporting standing. *See Minbatiwalla*, 424 B.R. at 109-110 (noting that "[c]ourts require an Affidavit from someone with personal knowledge establishing facts supporting standing, or possession of the original note and mortgage to establish standing in a state court foreclosure action and in a motion to lift the automatic stay in bankruptcy court under 11 U.S.C. § 362(d)"). The Debtor has offered no evidence to rebut the Brust Affidavit. On a motion for summary judgment, the opposing party must present competent evidence that a

10

genuine issue of fact exists. *See Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). They are required to "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Additionally, "it is well established that conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment. An opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." *Opals on Ice Lingere, Designs by Bernadette, Inc. v. Bodylines Inc.*, 320 F.3d 362, 370 n. 3 (2d Cir. 2003) (internal citations and quotations omitted).

The Debtor also challenges the third basis asserted by Wells Fargo for standing, namely that the language of the PSA acts as a written assignment of the Note to the Trust. *See* PSA § 2.01.[9] The Debtor contends that Wells Fargo failed to comply with the terms of the PSA because the assignment of the Mortgage was not timely executed under the terms of the PSA.[10] The Debtor also cites the failure of Wells Fargo to produce an Initial Certification, as required

---

[9]   The PSA provides that:

>  The Depositor, concurrently with the execution and delivery thereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the use and benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund.
>
>  In connection with such sale, the Depositor has delivered to, and deposited with, the Trustee or the Custodian, as its agent, the following documents or instruments with respect to each Mortgage Loan so assigned: (i) the original Mortgage Note . . . , (ii) the original Mortgage . . . , (iii) . . . the assignment . . . to the Trustee of the Mortgage with respect to each Mortgage Loan . . . ."
>
>  PSA § 2.01.

[10]  The Debtor notes that the PSA sets a closing date of September 30, 2004 and the cut-off date as September 1, 2004. *See* PSA at 10-11. Section 2.02 of the PSA provides, in part, that:

>   On the Closing Date, the Trustee or the custodian on its behalf will deliver an Initial Certification confirming whether or not it has received the Mortgage File for each Mortgage Loan, but without review of such Mortgage File, except to the extent necessary to confirm whether such Mortgage File contains the original Mortgage Note or a lost note affidavit and indemnity in lieu thereof.

11

under Section 2.02 of the PSA or a copy of Exhibit B to the PSA.[11]  The Debtor reasons, therefore, that the Note was never properly transferred into the Trust.

As a threshold matter, the Court does not need to resolve issues regarding Wells Fargo's third basis for standing, given its ruling regarding Wells Fargo's possession of the indorsed Note.  In any event, the case law is clear that a non-party to a pooling and servicing agreement cannot rely upon the alleged non-compliance with the terms of that agreement as a defense.  "The weight of caselaw throughout the country holds that a non-party to a PSA lacks standing to assert non-compliance with the PSA as a claim or defense unless the non-party is an intended (not merely incidental) third party beneficiary of the PSA." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 2013 U.S. Dist. LEXIS 45031, at *11 (S.D.N.Y. March 27, 2013) (collecting cases); *see also Bank of N.Y. Mellon v. Gales*, 982 N.Y.S.2d 911, 912 (2d Dep't 2014).  Nothing here gives the Debtor standing to raise non-complaince with the PSA.  The selling or transferring of a loan through a PSA will not, in and of itself, render a non-party to be a third-party beneficiary of the agreement.  *See Bittinger v. Wells Fargo Bank N.A.*, 744 F. Supp. 2d 619, 625-26 (S.D. Tex.

---

[11]     At the hearing held on August 1, 2014, counsel to Wells Fargo provided the Court with the Affidavit of Alisha Mulder in Support of Wells Fargo Bank N.A.'s Motion for Summary Judgment, dated July 17, 2014 (the "Mulder Affidavit") (ECF No. 93).  The Mulder Affidavit states that at the time of the Debtor's filing of her bankruptcy petition on March 2, 2011, the assets of the Trust included the loan at issue.  *See* Mulder Aff. ¶ 3.  It also attaches a copy of the Mortgage Loan Schedule attached as Exhibit B to the PSA, which includes an identifier number that documents that the loan at issue is among the assets transferred to the Trust.

The Debtor objects to the submission of Exhibit B to the PSA, stating that it was not produced in discovery despite a discovery demand for "all documents concerning any pooling and servicing agreement or other offering involved in the assignment, transfer or acquisition of the Note or Mortgage, including, but not limited to, filed annual reports."  Stmt. of the Debtor in Further Opposition to the Motion of Wells Fargo Bank for Summary Judgment and in Support of Expungement of Claim No. 4-2 ¶ 2 (ECF No. 92).  The Debtor asserts that the copy of the PSA produced in discovery contained an "Exhibit 2" entitled "Mortgage Loans" that was blank.  *See id.* ¶ 3.  A copy of this exhibit is attached to the Debtor's pleading.  *See id.*, Exhibit A.  The Court agrees with the Debtor that this new Exhibit B to the PSA should not be considered due to failure to produce it at discovery.  Moreover, the Court appreciates the Debtor's frustration with the lack of a more clear factual record by Wells Fargo earlier in this case on the issue of standing.  However, it is not necessary for the Court to rely on Exhibit B to resolve the motion given the other undisputed evidence in the record.

2010). Rather, the intent to do so must "be clear from the face of the PSA." *Rajamin*, 2013 U.S. Dist. LEXIS 45031, at *11. The Debtor has not identified such a clear intent in this PSA.[12]

## CONCLUSION

For the reasons set forth above, the Court concludes that Wells Fargo has standing to file the Claim and grants the Wells Fargo's motion for partial summary judgment. Wells Fargo should submit an order on five days' notice.

Dated: New York, New York
January 14, 2015

        */s/ Sean H. Lane*
        UNITED STATES BANKRUPTCY JUDGE

---

[12] In any event, "even assuming that the transfer of [parties'] mortgages to their respective trusts violated the terms of their respective PSAs, the after-the-deadline transactions would merely be voidable at the election of one or more of the parties—not void." *Tran v. Bank of N.Y.*, 2014 U.S. Dist. LEXIS 40261, at *21 (S.D.N.Y. March 24, 2014). And, "even if the allegedly untimely conveyances were to be considered void under [N.Y. Est. Powers & Trusts Law] § 7-2.4, . . . courts in the Second Circuit have found that that section does not provide standing to mortgagors to challenge the conveyances." *Id.*